UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JILL GREENE, f/k/a Jill Karen Balash, *Executrix of the Estate of William J. Heinrichs, III*,<br>    *Plaintiff*,<br><br>v.<br><br>LIBERTY BANK, ET AL.,<br>    *Defendants*. | CASE NO. 3:24-CV-831 (KAD)<br><br><br><br><br>JULY 22, 2025 |

**MEMORANDUM OF DECISION**
**RE: MOTION TO DISMISS (ECF No. 19); CROSS-MOTION FOR SUMMARY JUDGMENT (ECF NO. 24)**

Kari A. Dooley, United States District Judge:

This interpleader action involves a dispute between Plaintiff/Counter-Defendant Jill Greene and Defendant/Counter-Claimant Internal Revenue Service ("IRS") over approximately $9,100.00 (the "Disputed Funds"), which the IRS seeks to recover from the surplus proceeds of a tax sale (the "Interpleader Funds") to satisfy a tax lien arising out of Ms. Greene's purported failure to pay withholding taxes for the third quarter of 2012. Pending before the Court are Ms. Greene's initial Motion to Dismiss, the IRS's Cross-Motion for Summary Judgment, as well as a slew of additional motions filed by Ms. Greene which, *inter alia*, essentially seek the same relief as her initial Motion to Dismiss.[1] The IRS seeks disbursement of the Disputed Funds (or an order directing same to the Middletown Superior Court, which presently holds the Interpleader Funds). Ms. Greene argues that the IRS is not entitled to the Disputed Funds. For the reasons that follow,

---

[1] The IRS correctly points out that Ms. Greene's initial Motion to Dismiss (ECF No. 19), relying upon outside evidence, is more properly styled as a motion for summary judgment. *See* MSJ at 4 n.3. Ms. Greene is proceeding *pro se* in her capacity as a Counter-Defendant, and as such, the Court affords her special solicitude in reviewing her pleadings. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

Ms. Greene's initial Motion to Dismiss (ECF No. 19) is **GRANTED in part**, and the IRS's Cross-Motion for Summary Judgment is **GRANTED**.[2]

**The Interpleader Funds and Procedural History**

The relevant facts are taken from the IRS's Local Rule 56(a)1 Statement ("IRS 56(a)"), ECF No. 24-2, and attached exhibits, ECF Nos. 24-4 through 24-6. All the facts set forth herein are undisputed unless otherwise indicated.[3]

On May 23, 2023, a tax sale was conducted of the property of decedent William J. Heinrichs, III, located at 40 Clearview Road in Moodus, Connecticut (the "Subject Property"), for delinquent taxes and/or charges pursuant to Conn. Gen. Stat. § 12-155, *et seq*. IRS 56(a) at ¶ 1. After the Subject Property was not redeemed by the statutory deadline, it was conveyed to the winning bidder of the tax sale, and on November 24, 2023, the tax collector deposited excess

---

[2] The Court also dispenses with Ms. Greene's frivolous requests for sanctions against the IRS, asserted principally through her Motion to Dismiss (ECF No. 19) and Motion for Sanctions (ECF No. 30). The Court cannot identify the genesis of Ms. Greene's apparent disdain for the Government's counsel or the IRS. Her pleadings, had they been filed by an attorney, would likely have resulted in sanctions under Rule 11. Although her vitriolic accusations that counsel and the IRS have acted in bad faith; intentionally mislead the Court; and, in no uncertain terms, lied, are without evidentiary support, the Court does not, as requested by the IRS, strike those allegations from Ms. Greene's submissions. *See* MSJ at 8–9. Nevertheless, due to, *inter alia*, the granting of summary judgment in the IRS's favor, the Court necessarily ascertains no basis for sanctioning counsel or the IRS. Likewise, Ms. Greene's second Motion to Dismiss (ECF No. 28) and Motion for Disbursement of Funds (ECF No. 36)—which essentially raise the same arguments asserted in her initial Motion to Dismiss (*i.e.*, that the IRS is not entitled to the disputed funds and that the remaining tax sale proceeds should be disbursed to Ms. Greene)—are denied.

[3] Through her Motion to Strike and supporting Affidavit, ECF Nos. 29, 31, which the Court has construed as an opposition to the IRS's Cross-Motion for Summary Judgment, *see* ECF No. 32, Ms. Greene generally objects to the IRS's Rule 56(a)1 Statement as insufficient, noting that its "lack of conciseness and organization makes it difficult to identify the genuinely disputed material facts." Motion to Strike at 2. But aside from broadly disputing whether her tax liability has been satisfied and otherwise reasserting her allegations of government misconduct, Ms. Greene does not comply with Local Rule 56(a) in several significant respects. *See* D. Conn. L. Civ. R. 56(a)3. As a result, the undisputed facts as set forth by the IRS—many of which Ms. Greene appears to agree are not in dispute—are deemed admitted. *See Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (deeming admitted Rule 56(a)1 Statements where plaintiff responded with conclusory allegations, speculation, conjecture or legal arguments); *Shetucket Plumbing Supply Inc. v. S.C.S. Agency, Inc.*, 570 F. Supp. 2d 282, 283 n.1 (D. Conn. 2008) (finding factual assertions in Local Rule 56(a)1 Statement to be "deemed admitted because they have not been squarely denied with specific citation to evidence in the record as Local Rule 56(a)(3) requires"); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."); *S.E.C. v. Glob. Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94, 109 (D. Conn. 2004) (Local Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute").

proceeds, *i.e.*, the Interpleader Funds, in the amount of $106,845.45 with the Clerk of Middletown Superior Court. *Id.* at ¶ 2. Thereafter, in February and March 2024, respectively, Liberty Bank and the IRS separately filed applications seeking the return of certain Interpleader Funds pursuant to Conn. Gen. Stat. § 12-157(i)(2), to satisfy judgment liens. *Id.* at ¶¶ 3, 5. As relevant here, the IRS sought payment of $9,129.54 in respect to a statutory lien against Mr. Heinrichs, as well as $19,017.47 in respect to a statutory lien against Mr. Heinrich's heir, Ms. Greene. *Id.* at ¶ 5. Following a hearing on April 8, 2024, the Superior Court authorized distribution of $9,129.54 to the IRS in satisfaction of Mr. Heinrich's judgment lien, as well as a partial distribution of $38,595.13 to Liberty Bank, leaving a balance of $59,120.78 in Interpleader Funds. *See id.* at ¶ 6.

Also on April 8, 2024, Ms. Greene, proceeding *pro se* as the appointed executrix on behalf Mr. Heinrich's estate, filed her own application for the return of tax sale proceeds (the "Application"), requesting that the remaining Interpleader Funds be turned over to the estate. *See id.* at ¶¶ 7–9. On May 6, 2024, the IRS removed the matter to this Court pursuant to 28 U.S.C. §§ 1442(a)(1), 1444, and 1446, and thereafter filed both an Answer to the Application, as well as a Counterclaim seeking to enforce the federal tax liens against a portion of the Interpleader Funds. *See* ECF Nos. 1, 13. Specifically, the IRS's Counterclaim sought to enforce: (a) a trust fund liability assessment under 26 U.S.C. § 6672 against Ms. Greene for the second quarter of 2012, representing the unpaid portion of the income and Federal Insurance Contributions Act ("FICA") taxes withheld from the wages of employees (the "Second Quarter Liability"); and (b) a trust fund liability assessment under 26 U.S.C. § 6672 against Ms. Greene for the third quarter of 2012, representing the unpaid portion of the income and FICA taxes withheld from the wages of employees (the "Third Quarter Liability"). *See* ECF No. 13 at ¶¶ 3, 4. The IRS asserts that because Ms. Greene "was the lawful owner of the [Subject Property] *at the time of the local tax sale*, and

3

the proceeds belonged to her after the sale subject to divestment or recover[y] on behalf of the decedent's estate only if and to the extent the estate needs part of the proceeds of the sale of the [Subject Property] to satisfy claims," and "unless a distribution to the United States of part of the interpled funds sufficient to satisfy the federal tax liens against [Ms.] Greene would leave the estate with insufficient assets to satisfy reasonable expenses of administration and the debts of the decedent, the estate has no cause to recover the part of the proceeds of the [Subject Property] sufficient to satisfy the federal tax liens of [Ms.] Greene." *See id.* at ¶ 13. In other words, the IRS argues it is entitled to a disbursement of the Interpleader Funds to satisfy Ms. Greene's tax liability, unless such a disbursement would result in the estate's insolvency. And according to the IRS, the requested disbursement would not leave the estate with an inability to pay Mr. Heinrich's remaining debts, as well as the reasonable expenses associated with the administration of the estate. *See id.* at ¶ 12.

On November 14, 2024, Ms. Greene filed her initial Motion to Dismiss, alleging, *inter alia*, that in fact, the Second Quarter Liability and Third Quarter Liability had been satisfied, and further asserting that the Third Quarter Liability was barred by the applicable statute of limitations.[4] *Id.* at ¶ 17; *see generally* MTD, ECF No. 19. On December 3, 2024, the IRS submitted, in a single filing, an opposition to Ms. Greene's initial Motion to Dismiss, as well as a Cross-Motion for Summary Judgment seeking the disbursement of $9,129.54 in Interpleader Funds to satisfy Ms.

---

[4] The Motion to Dismiss also asserts that the IRS was aware of Ms. Greene's satisfaction of the Second Quarter Liability when it filed the Counterclaim. To the extent Ms. Greene seeks sanctions as a result, the Court has already denied such requests, in part because the undisputed facts demonstrate that Ms. Greene's Second Quarter Liability remained outstanding at the time the IRS filed its Counterclaim, and for several months thereafter. *See supra* n.2; *see also* IRS 56(a) at ¶¶ 15–26.

Greene's Third Quarter Liability only.[5]  *See* MSJ, ECF No. 24.  On December 27, 2024, Ms. Greene filed: (a) a second Motion to Dismiss, asserting a lack of jurisdiction; (b) a Motion to Strike, which the Court has construed as her opposition to the IRS's Motion for Summary Judgment; and (c) a Motion for Sanctions against the IRS.  *See* ECF Nos. 28–30.  On January 17, 2025, the IRS filed a document "in triplicate," which simultaneously: (1) replied to Ms. Greene's opposition to the Motion for Summary Judgment (*i.e.*, her "Motion to Strike"); (2) objected to Ms. Greene's second Motion to Dismiss; and (3) objected to Ms. Greene's Motion for Sanctions.[6]  *See* ECF Nos. 33–35.  On May 1, 2025, Ms. Greene filed a Motion for Disbursement of Funds, another Motion to Strike, and another objection to the IRS's Motion for Summary Judgment.  *See* ECF Nos. 36–38.  Insofar as each of those filings pertains in some measure to Ms. Greene's purported outstanding tax liability and the related disbursement of the Interpleader Funds, *i.e.*, issues previously raised and fully briefed, the Court indicated that they too would be taken up in due course.  *See* ECF No. 39.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage*, 875 F.3d at 113–14 (quoting

---

[5] Therein, the IRS concedes that Ms. Greene's Second Quarter Liability was "indirectly satisfied when her husband's similar assessment was credited with an overpayment of the Greenes' joint 2023-year income tax," *see* MSJ at 5, but continues to assert that the Third Quarter Liability remains outstanding.  *See id.*; IRS 56(a) at ¶¶ 27.  For this reason, Ms. Greene's initial Motion to Dismiss is granted in part, insofar as it challenges the IRS's efforts to recover the Second Quarter Liability from the Interpleader Funds.

[6] The Court appreciates this approach by the Government. It helped to clarify and condense an already convoluted docket, made so in large part by Ms. Greene's numerous and often duplicative filings.

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). She cannot "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). Nor can she rely on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Discussion**

The IRS seeks disbursement of the Disputed Funds from the Interpleader Funds, in satisfaction of Ms. Greene's Third Quarter Liability.  Ms. Greene objects, claiming that her tax liabilities have been fully satisfied or that the statute of limitations precludes the action.  Ms. Greene further seeks the disbursement of the remaining Interpleader Funds to Mr. Heinrich's estate.  The Court agrees with the IRS, and finds that, because the undisputed facts demonstrate the existence of a valid tax lien as to Ms. Greene's Third Quarter Liability that attached to the Interpleader Funds, the IRS is entitled to a distribution of the Disputed Funds.

The Interpleader Action

Here, as a threshold matter, the Court agrees with the IRS that "[t]he fundamental and substantive nature of this case remains an interpleader under 28 U.S.C. § 2410," in which the IRS and Ms. Greene seek resolution of their respective claims to the Interpleader Funds.  Pursuant to 28 U.S.C. § 2410, "the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien."  Thus, to establish its entitlement to a disbursement of the Disputed Funds, the IRS must demonstrate the existence and validity of Ms. Greene's Third Quarter Liability, as well as its lien with respect to the Interpleader Funds.  It has done so.

First, the undisputed facts, set forth above, establish the existence of a tax lien as to Ms. Greene's Third Quarter Liability.  Indeed, a trust fund liability assessment was entered against Ms. Greene on September 29, 2014, and thereafter, an accompanying Notice of Federal Tax Lien was filed for this liability on October 21, 2014.  *See* IRS 56(a) at ¶ 11 (citing Notice of Removal, ECF No. 1, Exhibit C – Notice of Federal Tax Lien).  Additionally, the Court finds that Ms. Greene's

7

Third Quarter Liability did not lapse, as she posits, with the passage of time. Pursuant to Internal Revenue Code § 6502, Ms. Greene's tax liability would be required to be collected within ten years of its assessment—here, by September 29, 2024, a date known as the collection statute expiration date ("CSED"). However, it is undisputed that pursuant to Section 6502, Ms. Greene's CSED was tolled when the IRS filed its Counterclaim on June 12, 2024, and that "a 'freeze code' had been placed in her account to signify the court action and to prevent the automated write-off of her liability" at the CSED. *See* IRS 56(a) at ¶¶ 24–26.

Having concluded the validity of the tax lien, the Court next concludes that the tax lien is properly attached to the Interpleader Funds, *i.e.*, the surplus proceeds from the tax sale of the Subject Property, and that therefore, the IRS is entitled to the disbursement of the Disputed Funds. Under Connecticut law, upon Mr. Heinrich's death the Subject Property passed immediately to Ms. Greene as his heir and thus, her tax liens immediately attached to the Subject Property. *See Zanoni v. Lynch*, 79 Conn. App. 309, 311 (2003) ("It is fundamental jurisprudence that title to real estate vests immediately at death in a deceased's heirs . . ."); *see also United States v. Comparato*, 22 F.3d 455, 457 (2d Cir. 1994) ("State law controls whether a taxpayer has an interest in property to which a lien may attach."). Moreover, it is well-settled that a federal tax lien assessed pursuant to Internal Revenue Code §§ 6321 and 6322 attaches to all property and all rights to property of the taxpayer, including after-acquired property. *See United States v. McDermott*, 507 U.S. 447, 448 (1983) (citing *Glass City Bank v. United States*, 326 U.S. 265 (1945)). It therefore follows that the tax lien for Ms. Greene's Third Quarter Liability attached to the Subject Property upon Mr. Heinrich's passing and prior to the tax sale. The IRS is thus entitled to satisfy the Third Quarter Liability through a distribution from any Interpleader Funds that remained following satisfaction of Mr. Heinrich's debts. And it is undisputed that there are $59,120.78 in remaining

Interpleader Funds and that the only creditor claim filed with the Probate Court is one from Ford Motor Credit Company LLC seeking a $3,280.10 disbursement.[7]  *See* IRS 56(a) at ¶ 6, 13.  For these reasons, the IRS has established that it is entitled to a disbursement of the Disputed Funds.

Notwithstanding, Ms. Greene contends that the IRS's Counterclaim is moot and/or equitably estopped insofar as she has satisfied the Third Quarter Liability.  However, as discussed above, Ms. Greene's Third Quarter Liability has not been satisfied and remains outstanding.  On this issue, in support of its Rule 56(a) Statement, the IRS attached, *inter alia*, the sworn Supplemental Declaration of John D. Carroll, a Revenue Officer Advisor for the IRS tasked with reviewing IRS records and evaluating unpaid taxpayer liabilities.  *See* Supporting Declaration of John D. Carroll ("Carroll Decl."), ECF No. 24-3.  Mr. Carroll's sworn declaration—which was based, in part, upon his review of the very account transcripts cited repeatedly by Ms. Greene—unequivocally indicates that Ms. Greene's Third Quarter Liability remains outstanding, notwithstanding the write-off of her husband's tax liability and the related satisfaction of Ms. Greene's Second Quarter Liability.[8]  *See id.*

**Conclusion**

For all of the foregoing reasons, Ms. Greene's Motion to Dismiss is **GRANTED in part** insofar as the IRS concedes that the Second Quarter Liability has been satisfied, and **DENIED** in

---

[7] Without evidentiary support, and contrary to the Probate Court records, Ms. Greene alleges additional debts and expenses which must be paid from the Interpleader Funds.  Her unsupported and conclusory allegations do not create a genuine issue of material fact. *See Robinson*, 781 F.3d at 44.

[8] In her affidavit dated December 24, 2024, which was ostensibly filed in support of her opposition to the IRS's Motion for Summary Judgment, Ms. Greene states that the tax liability at issue in this case "originated from my husband's former business, which was incorporated and operated before my relationship with my husband," and that she "held no title, control over bank accounts, power of attorney, or fiduciary authority within the corporation at any time." *See* ECF No. 31 at 1.  To be clear, the Court does not herein decide the merits or propriety of Ms. Greene's tax liability.  *See Kulawy v. United States*, 917 F.2d 729, 733 (2d Cir. 1990) (Section 2410 does not permit taxpayers to challenge the substantive liabilities that give rise to a tax lien).  Indeed, as the IRS accurately observes, the distribution of Interpleader Funds authorized herein is without prejudice to Ms. Greene subsequently seeking a refund from the IRS pursuant to 26 U.S.C. §§ 6511 and/or 6532.  Such efforts, if undertaken, may assert merits arguments addressed to the origins of the tax liability.

all other respects; and the IRS's Motion for Summary Judgment is **GRANTED**. It is Adjudged and Decreed that the IRS is entitled to disbursement from the Interpleader Funds in the amount of Ms. Greene's outstanding Third Quarter Liability. However, insofar as the Interpleader Funds were not transferred to this Court upon removal, the Clerk of Court is directed to remand this case to the Middletown Superior Court, which presently maintains the Interpleader Funds, so that the Interpleader Funds may be distributed in accordance with this decision.[9] Any other outstanding issues are appropriately resolved in the Superior Court.

      **SO ORDERED** at Bridgeport, Connecticut, this 22nd day of July 2025.

                                           /s/ Kari A. Dooley
                                          KARI A. DOOLEY
                                          UNITED STATES DISTRICT JUDGE

---

[9] Though the IRS's Motion for Summary Judgment seeks a disbursement of $9,021.06, its reply brief seeks disbursement of $9,129.54, which the Court presumes reflects the interest that accrued in the 45 days between its briefs. The IRS will have the opportunity to update the Superior Court with respect to any additional assessment of interest.